PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**December 2, 2009**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re: | Case No. 07-44277 |
| JEFFREY DAVID JONES and CLAUDIA JEAN JONES, | |
| Debtors. | |
| OMNI CORE VENTURES, INC. dba Allways Quality Construction, | Adversary No. 08-04098 |
| Plaintiff, | **MEMORANDUM DECISION** |
| v. | |
| JEFFREY DAVID JONES and CLAUDIA JEAN JONES, | **\*\*NOT FOR PUBLICATION** |
| Defendants. | |

Trial was held in this matter on November 4, 2009. Omni Core Ventures, Inc. (Plaintiff), in accordance with its complaint, seeks to have the Court deny the discharge of Jeffrey David and Claudia Jean Jones (Debtors) pursuant to 11 U.S.C. § 727(a)(2) and (a)(4).[1] At the conclusion of the

---

[1] Plaintiff's causes of action pursuant to 11 U.S.C. § 727(a)(3) and (a)(5) were dismissed on summary judgment on October 13, 2009.

Unless otherwise indicated, all "Code," Chapter and Section references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended by BAPCPA, Pub. L. 109-8, 119 Stat. 23, as this case was filed after October 17, 2005, the effective date of most BAPCPA provisions.

MEMORANDUM DECISION - 1

trial, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052.

## FINDINGS OF FACT

Jeffrey Jones (Debtor) worked in the banking and real estate business. Prior to filing bankruptcy, he inherited real property on Russell Street, Stevenson, Washington (Property). For approximately one year prior to October, 2007, the Debtors attempted to sell the Property. They listed the Property for up to $200,000, but received no offers. They also advertised it briefly for sale requesting potential purchasers to "just make an offer." On October 15, 2007, the Debtors sold the Property to American Homes, LLC (American Homes), a limited liability company associated with the Debtor's employer. At this time, the Debtors were in default on the loan, and they had received a letter of intent to foreclose on the Property. The Debtor believed he had only two to three months before foreclosure would occur, however, the notice of foreclosure had not been mailed nor the sale date set.

The Debtor was of the opinion that the Property was worth between $50,000 and $75,000 in October, 2007. Nonetheless, he sold the Property to his employer for $26,500, which covered the mortgage balance of approximately $26,084, soon after a judgment for several hundred thousand dollars was entered against the Debtors in state court by the Plaintiff. American Homes paid all of the closing costs. The Debtor testified that he was led to believe that he would be able to repurchase the Property from American Homes a few years later at a fair price once he was "back on his feet." The Debtors were distressed when they learned that American Homes sold the Property to a third party some 30 days later for $53,000. When the Debtor confronted his employer about the sale, the Debtor was terminated from his job.

In July or August, 2007, the Debtor was offered the opportunity to become a founding and board of directors member of CentrePointe Community Bank (Bank), conditioned on him purchasing $50,000 worth of Bank stock. The Debtor subsequently cashed out his 401(k) account in the amount of $43,000, using approximately $25,000 to purchase Bank stock and the balance to pay personal bills. Based on advice from Bank officials, the Debtor believed he could then roll the purchased Bank

stock back into his retirement account. In order to secure the remaining funds needed, he obtained a loan from a fellow Bank founder, officer and board member, Raymond Sprung (Sprung), for the balance of the $50,000, and granted him a second position Deed of Trust on his real property located at 114 Regulator Street, Cascade Locks, Oregon, and also gave him a security interest in the Bank stock to be purchased. The Debtor became a Bank board member and officer. The Debtor resigned from those positions when he began employment with IndyMac Bank. The Debtor testified that in the summer of 2007, he consulted with a bankruptcy attorney.

The Bank issued stock certificates on October 5, 2007, but the Debtor testified that he did not receive his 5,000 shares of stock with $10 par value until February, 2008. The Debtor also received a stock warrant in February, 2008, entitling him to purchase another $50,000 worth of stock, although the Debtor testified that he did not know the details of the stock warrant.

On December 11, 2007, the Debtors filed bankruptcy under Chapter 7, Title 11. The Debtors' Statement of Financial Affairs (Statement) disclosed the sale of the Property. The only possible mention of the Bank transaction occurred in Schedule B where the Debtors listed $25,000.00 and the explanation: "401k – in process of being rolled over to IRA." The Plaintiff filed a Proof of Claim on January 17, 2008, based on the state court judgment obtained against the Debtors in the amount of $228,400.85 in August, 2007.

The first meeting of creditors occurred on January 16, 2008. Thereafter, the Debtor sent his bankruptcy attorney a letter explaining the sale of the Property and the purchase of the Bank stock. On March 11, 2008, the Debtors filed Amended Schedules B and C; these provided no new information regarding the Property or the Bank stock. On February 14, 2008, the Chapter 7 Trustee filed an objection to the Debtors' exemption claimed in the $26,000 being rolled over to an IRA. After responding to the objection, the Debtors decided not to litigate the issue. Instead, they turned over all of the stock and instructed Sprung to claim his stock from the Trustee. On July 1, 2008, the Debtors' attorney withdrew. On July 25, 2008, the Debtors testified at their 2004 examinations, at which time

they explained the facts surrounding the Bank stock transaction. This adversary proceeding was filed by the Plaintiff on August 27, 2008.

### CONCLUSIONS OF LAW

Section 727 is to be construed liberally in favor of debtors and strictly against the party objecting to discharge. First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986). The burden of proof under § 727 is a preponderance of the evidence. Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 730 (9th Cir. BAP 1999) (citing Grogan v. Garner, 498 U.S. 279, 284 (1991)).

**§ 727(a)(2)(A)**

The Plaintiff contends that the Debtors' discharge should be denied because the Debtors transferred the Property within one year of filing bankruptcy with the intent to hinder, delay or defraud creditors.

An objection to discharge under § 727(a)(2)(A) requires, within one year of filing the petition, (1) a transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the transfer or concealment. In order to deny a discharge under this section, there must be a finding of actual intent to hinder, delay or defraud creditors. Constructive intent is not enough. However, intent "'may be established by circumstantial evidence, or by inferences drawn from a course of conduct.'" Adeeb, 787 F.2d at 1343 (quoting In re Devers, 759 F.2d 751, 753-54 (9th Cir. 1985)). Denial of discharge need not rest on a finding of intent to defraud; rather, intent to hinder or delay is sufficient. Bernard v. Sheaffer (In re Barnard), 96 F.3d 1279, 1281 (9th Cir. 1996).

It is undisputed that the Debtors transferred property of the Debtors within one year of filing bankruptcy. The issue here is whether the preponderance of the evidence establishes that the Debtors intended to defraud, hinder or delay a creditor in transferring the Property. This is a question of fact. Emmett Valley Assocs. v. Woodfield (In re Woodfield), 978 F.2d 516, 518 (9th Cir. 1992).

The Court concludes that as to Claudia Jones, there is no evidence to support a finding of intent to defraud, hinder or delay a creditor through the sale of the Property. Her testimony was credible that only the Debtor was materially involved in the attempted sale of the Property, as well as the subsequent negotiations and eventual sale to American Homes. Any participation by her was at the direction of the Debtor.

The evidence presented indicates that the Debtor attempted through a realtor to sell the Property for approximately one year for as much as $200,000, but was unsuccessful. When the loan went into default and the Debtor believed foreclosure was imminent, he personally tried to sell the Property and testified that he would have considered all offers. The Debtor, however, quickly sold the Property to American Homes after a sizable judgment was entered against him in state court by the Plaintiff. The Plaintiff also had commenced garnishment proceedings.

The Court concludes that a preponderance of the evidence indicates that rather than risk losing the inherited Property through a lender foreclosure or actions by the Plaintiff, the Debtor admittedly sold the Property for less than its fair market value in order to personally have the opportunity to regain it at a later date, with American Homes also realizing a profit. This was all done soon after entry of a substantial state court judgment against him and merely two months prior to filing bankruptcy. The Debtor was not successful in regaining the Property because of a quick resale by American Homes for twice the price. The most credible evidence indicates that the Debtor intended to transfer the Property for less than its value with the intent to hinder or delay the Plaintiff or his other creditors from having an opportunity to purchase the Property at a possible foreclosure sale and realize the admittedly $25,000 to $50,000 of equity existing at the time of the sale to American Homes. This was done so the Debtor could repurchase the Property at a later date, hopefully below fair value. The Court does not find that the Debtor's denials are credible, particularly as the Debtor had previously met with bankruptcy counsel, worked in the mortgage business, and was or should have been aware that his actions would deprive the Plaintiff, other creditors, or the bankruptcy estate of an opportunity to realize on the

Property's equity. The Debtor's action in attempting to retain an interest in the Property is indicative of a fraudulent intent to hinder or delay the Plaintiff as a judgment creditor.

The Court concludes that the Plaintiff has met its burden in establishing intent by a preponderance of the evidence with regard to the Debtor under § 727(a)(2)(A).

**§ 727(a)(4)(A)**

Section 727(a)(4)(A) provides that a court should grant a discharge to a debtor, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. To deny a debtor a discharge under § 727(a)(4)(A), the plaintiff must show that (1) the debtor knowingly and fraudulently made a false oath; and (2) the false oath related to a material fact. Aubrey v. Thomas (In re Aubrey), 111 B.R. 268, 274 (9th Cir. BAP 1990). "A false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 62 (9th Cir. BAP 1999) (citing In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984)). "'[O]nce it reasonably appears that the oath is false, the burden falls upon the [debtor] to come forward with evidence that he has not committed the offense charged.'" Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987) (quoting In re Mascolo, 505 F.2d 274, 276 (1st Cir. 1974)).

As with § 727(a)(2)(A), intent may be inferred from the actions of the debtor. A party objecting to a debtor's discharge on false oath grounds must establish "that the information was omitted for the specific purpose of perpetrating a fraud and not simply because [a] debtor was careless or failed to fully understand his attorney's instructions." Dubrowsky v. Estate of Perlbinder (In re Dubrowsky), 244 B.R. 560, 571-72 (E.D. N.Y. 2000).

The requisite false oath to deny a discharge under this section may involve "either an affirmatively false statement or an omission from the debtor's schedules." Searles v. Riley (In re Searles), 317 B.R. 368, 377 (9th Cir. BAP 2004) (citing Wills, 243 B.R. at 62). Proof that the debtor merely omitted information from bankruptcy schedules is not sufficient to establish fraudulent intent on

MEMORANDUM DECISION - 6

the debtor's part. La Brioche, Inc. v. Ishkhanian (In re Ishkhanian), 210 B.R. 944, 956 (Bankr. E.D. Pa. 1997). The requisite intent may be found where there has been a pattern of falsity or a reckless indifference to the truth. Khalil v. Developers Surety and Indemnity Co. (In re Khalil), 379 B.R. 163, 174-76 (9th Cir. BAP 2007); In re Tully, 818 F.2d at 111-12; Diorio v. Kreisler-Borg Constr. Co., 407 F.2d 1130, 1331 (2nd Cir. 1969).

In this case, the Debtors failed to disclose the following facts surrounding the Bank transaction in their schedules and Statement: the paid-for but not-yet-issued Bank stock; the stock warrant; the Debtor's past position as officer and board member of the Bank; the loan from Sprung; the deed of trust on the Debtors' property securing the obligation to Sprung; and the pledge of stock to Sprung. There is no dispute that this information is material, as it concerns assets, business dealings, and the disposition of the Debtors' property.

As with the action under § 727(a)(2)(A), the Court concludes that there is no evidence to support a finding under § 727(a)(4)(A) as to Claudia Jones. While Ms. Jones signed the bankruptcy schedules and Statement, it is undisputed that the Bank transactions were solely with the Debtor, and that she had little to no knowledge of the transaction, other than to write the checks as directed by the Debtor.

Schedule B specifically requests disclosure of "shares in banks" and "stock and interests" in businesses. Schedule D requires disclosure of creditors holding claims secured by property of the debtor as of the date of the filing of the petition. Paragraph 10 of the Statement requires disclosure of all property transfers other than in the ordinary course of business within the prior two years. Finally, paragraph 18 of the Statement requires disclosure of all businesses in which the debtor was an officer or director within six years before filing bankruptcy. "The debtor is imposed with a paramount duty to carefully consider all questions included in the Schedules and Statement and see that each is answered accurately and completely." Casey v. Kasal (In re Kasal), 217 B.R. 727, 734 (Bankr. E.D. Pa. 1998), aff'd, 223 B.R. 879 (E.D. Pa. 1998). As set forth above, the schedules and the Statement made it clear that the Debtor was required to disclose the paid-for but not-yet-issued Bank stock,

MEMORANDUM DECISION - 7

second position deed of trust on the Cascade Locks property securing the obligation to Sprung, pledge of stock to Sprung, and Debtor's positions as officer and board member of the Bank. The Debtor's experiences in the real estate and banking businesses are probative of the fact that the Debtor would have understood the information required by the schedules and Statement. There was no testimony to the contrary. Yet the only information the Debtor chose to disclose was a 401(k) "in process of being rolled over to IRA."

The Debtor testified that he informed his bankruptcy counsel of the Bank stock transaction in August, 2007, in contemplation of filing bankruptcy. "Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts." Adeeb, 787 F.2d at 1343. But a debtor's reliance must be in good faith. Adeeb, 787 F.2d at 1343. For the defense of reliance of counsel to prevail, an item must be omitted on the honest advice of counsel, to whom the debtor has disclosed all pertinent facts. Counsel's advice is not a defense "when it is transparently plain that the property should be scheduled." Murietta v. Fehrs (In re Fehrs), 391 B.R. 53, 79 (Bankr. D. Idaho 2008) (quoting Neary v. Darby (In re Darby), 376 B.R. 534, 541 (Bankr. E.D. Tex. 2007)). "Nor can an attorney's willingness to bear the burden of reproach provide blanket immunity to a debtor; it is well settled that reliance upon advice of counsel is, in this context, no defense where it should have been evident to the debtor that the assets ought to be listed in the schedules." Tully, 818 F.2d at 111. In this case, there was no corroborative testimony from the Debtors' former attorney as to his responsibility or participation.

The Court finds that it was not reasonable, nor in good faith, for the Debtor to rely on counsel's advice, if made, not to fully disclose this information. The only evidence before the Court regarding this issue is the Debtor's self-serving statement that he made a full disclosure to his attorney before filing bankruptcy. Even if the Debtor's testimony about his disclosure to counsel is credible, given the clear and concise explanations in the schedules and Statement, as well as the Debtor's experiences in the real estate and banking businesses, the Court finds that it was "transparently plain that the advice [was] improper" and the defense on the reliance on counsel is not available. See In re Colvin, 288

MEMORANDUM DECISION - 8

B.R. 477, 483 (Bankr. E.D. Mich. 2003) (where the court found that the schedules made it "transparently plain" to the debtors that they were required to disclose tax refunds even if their attorney did not inform them of this obligation). "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." Tully, 818 F.2d at 111.

Nor did the Debtor choose to amend his schedules to include the omitted information. Prompt correction of an omission or inaccuracy may be evidence probative of lack of fraudulent intent. Searles, 317 B.R. at 377. When the false oath is contained in the schedules or statements, "the debtor's continuing duty to assure the accuracy of such schedules and statements means that the proper method of correction is a formal amendment of the schedules." Searles, 317 B.R. at 377. The Ninth Circuit Bankruptcy Appellate Panel has stated that "[a]n unfiled letter to the trustee does not suffice because it is not in the plain view of all parties in interest who should be entitled to rely on the accuracy of the court's official file." Searles, 317 B.R. at 377.

In this case, while the Debtor by letter advised his attorney of the facts surrounding the Bank stock transaction after the first meeting of creditors, the Debtor nonetheless failed to amend his schedules or Statement to disclose this information. As the Searles court noted, unfiled disclosures do not suffice. Additionally, even if the Debtor thought he did not need to list the Bank stock or stock warrants in the petition because they had not been issued at the time of the bankruptcy filing, the Debtor failed to file an amendment after the stock was issued, and after he received the stock warrant, in February, 2008. There was no evidence presented as to why there were no amendments filed to provide either the initially undisclosed information or the new post-petition information regarding the issued stock and stock warrant.

Counsel for the Debtors is correct that a Court should not take the difficult step of denying a debtor a discharge for minor discrepancies on their bankruptcy petition. If the Debtor had omitted only a few facts surrounding the Bank stock, this Court's conclusion may have been otherwise. But in this case, the Debtor failed to disclose <u>all</u> critical information regarding his substantial relationship with the

MEMORANDUM DECISION - 9

Bank and resulting liabilities, in at least seven separate material disclosures. He did so through repeated omissions in the schedules and Statement, as well as in his amendments. What little information the Debtor did disclose did not even hint at a Bank stock transaction or the attendant liabilities. "Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." <u>Tully</u>, 818 F.2d at 110. A primary purpose of § 727(a)(4) is to insure that the Trustee and creditors have accurate information without being required to conduct costly investigations. <u>Khalil</u>, 379 B.R. at 172 (quoting <u>Wills</u>, 243 B.R. at 63).

The Court cannot conclude that failure to disclose this information was an innocent oversight or careless omission. Instead, these multiple inaccuracies rise to the level of either a fraudulent intent or reckless indifference to the truth, which supports a finding of intent under § 727(a)(4)(A). Accordingly, the Plaintiff has met its burden under § 727(a)(4)(A) as to the Debtor.

*Paul B. Snyder*
United States Bankruptcy Judge
(Dated as of Entered on Docket date above)